# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| NICHOLAS RHODES, LE BON SIMON, JOHN TAYLOR, AND ROGER TAYLOR,<br><br>    *Plaintiffs,*<br><br>v.<br><br>THE INDIVIDUALS, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>    *Defendants.* | Civil Action No. 4:25-cv-01275<br>**JUDGE MICHAEL J. TRUNCALE** |

## AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs NICHOLAS RHODES, LE BON SIMON, JOHN TAYLOR, AND ROGER TAYLOR (collectively, "Plaintiffs"),[1] by and through their undersigned counsel, bring this Amended Complaint against Defendants, the individuals, partnerships, and unincorporated associations set forth on Schedule "A" included as Exhibit 3 herewith (collectively, "Defendants"), who are promoting, selling, offering for sale, and distributing goods bearing counterfeits and confusingly similar imitations of Plaintiffs' intellectual property, as well as their personal images, within this district through various Internet based e-commerce stores using the seller identities or names as set forth on Schedule "A" hereto (the "Seller IDs"), and in support of their claims, allege as follows:

---

[1] In Plaintiffs' original Complaint their names were removed to prevent Defendants from getting advance notice. Counterfeiting and infringement lawsuits like this one are closely monitored by Chinese defendants on websites like www.sellerdefense.cn, social media (QQ, WeChat, etc.), and elsewhere on the internet. The www.sellerdefense.cn website and others warn infringers specifically of product types, brands, law firms filing cases, and other information necessary for defendants, like those named in this case, to evade Plaintiffs' anti-pirating and anti-counterfeiting efforts and hide their ill-gotten gains. *See, e.g.* Ex. 2 at pages 28 & 154 of 163 (https://sellerdefense.cn/allcase2025/) (identifying undersigned counsel's law firm as counsel bringing infringement action based on pirated and counterfeit Masha and The Bear products in Case Nos. 25-cv-489 and 25-cv-01061 filed earlier this year in this Court). Because all the defendants have now been served, *see* Dkt. 35, Plaintiffs are now identified by name.

## SUMMARY OF THE ACTION

1.      Plaintiffs Nicholas Rhodes, Le Bon Simon, John Taylor, and Roger Taylor ("Plaintiffs") bring this action for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, common law trademark infringement, and common law misappropriation of image pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Texas common law.

## SUBJECT MATTER JURISDICTION

2.      This court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

3.      This court also has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121.

4.      This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

## PERSONAL JURISDICTION

5.      Defendants are subject to personal jurisdiction in this district because they purposefully direct their activities toward and conduct business with consumers throughout the United States, including within the state of Texas and this district, through at least the internet-based e-commerce stores accessible in Texas and operating under their Seller IDs.

6.      Defendants are subject to personal jurisdiction in this district because their illegal activities directed towards the state of Texas cause Plaintiffs injury in Texas, and Plaintiffs' claims arise out of those activities.

7.      Alternatively, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

## VENUE

8.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are subject to the court's personal jurisdiction and not resident in the United States and, therefore, there is no district in which an action may otherwise be brought.

9.      Venue is proper in this court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens who are engaged in infringing or other unlawful activities and causing harm within this district by advertising, offering to sell, selling or shipping infringing or otherwise unauthorized products to consumers into this district.

## THE PLAINTIFFS

10.      Plaintiffs are individuals residing in the United Kingdom or the United States.

11.      Plaintiffs form the Grammy Award winning English rock band, "Duran Duran," from Birmingham, United Kingdom. The band grew from alternative sensations in 1980 to mainstream, global pop stars by the early 1980s. As one of the most successful bands of the last four-plus decades, Duran Duran was a leading light in the MTV-driven "Second British Invasion" of the United States. Since then, they have sold over 100 million records, had 18 American hit singles, 21 UK Top 20 songs and continue to perform to huge concert audiences all over the world. The band members' albums continue to earn them high charting album positions in many markets. They are the recipients of seven lifetime achievement awards and are now among the most popular bands in the world by name recognition.

12.     Plaintiffs own the trademark described below that is the subject of this action.

13.     Plaintiffs' products are sold legitimately through their own website, https://duranduranofficialstore.com/, and other authorized retailers.

14.     Plaintiffs offer for sale and sell their products within the state of Texas, including this district, and throughout the United States.

15.     Like many other intellectual property rights owners, Plaintiffs suffer ongoing daily and sustained violations of their intellectual property rights at the hands of counterfeiters and infringers, such as Defendants identified herein.

16.     Plaintiffs are harmed, the consuming public is duped and confused, and the Defendants earn substantial profits in connection with their infringing conduct.

17.     To combat the harm caused by the combined actions of Defendants and others engaging in similar infringing or other unauthorized conduct, Plaintiffs expend significant resources in connection with their intellectual property enforcement efforts, including legal fees and investigative fees.

18.     The recent explosion of infringement over the Internet has created an environment that requires individuals like Plaintiffs to expend significant time and money across a wide spectrum of efforts to protect both consumers and themselves from the ill effects of infringement of Plaintiffs' intellectual property rights, including consumer confusion and the erosion of Plaintiffs' brand, as well as protecting themselves from other tortious conduct.

## PLAINTIFFS' INTELLECTUAL PROPERTY RIGHTS

### A.  PLAINTIFFS' TRADEMARK RIGHTS

19.     Plaintiffs are the owners of all rights in and to the "Duran Duran" Mark, U.S. Reg. No. 5,568,570 in International Classes 003, 006, 009, 014, 016, 021, 025, 041, registered on

September 25, 2018, and shown on Exhibit 1, which is valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Plaintiffs' Mark").

20.    The Duran Duran Mark consists of the wording "Duran Duran". This mark was originally registered in the United Kingdom, Foreign Reg. No. 017178476 and claims a priority date of September 5, 2017.

21.    The Duran Duran Mark is used in connection with the manufacture and distribution of Plaintiffs' high-quality goods. A true and correct copy of the Certificate of Registration for the Duran Duran Mark is Exhibit 1.

22.    The Duran Duran Mark has been used in interstate commerce to identify and distinguish Plaintiffs' high-quality goods for an extended period of time.

23.    The Duran Duran Mark has been used by Plaintiffs long prior in time to Defendants' use of copies of their trademark.

24.    The Duran Duran Mark has never been assigned or licensed to any of the Defendants.

25.    The Duran Duran Mark is a symbol of Plaintiffs' quality goods, reputation and goodwill and has never been abandoned.

26.    Plaintiffs have carefully monitored and policed the use of the Duran Duran Mark.

27.    Plaintiffs have expended substantial time, money and other resources developing, advertising and otherwise promoting the Duran Duran Mark.

28.    Plaintiffs have extensively used, advertised, and promoted the Duran Duran Mark in the United States in association with the sale of high-quality goods.

29.    Plaintiffs have spent substantial resources promoting the Duran Duran Mark and products bearing the Duran Duran Mark.

30. As a result of Plaintiffs' efforts, members of the consuming public readily identify merchandise bearing or sold under the Duran Duran Mark as being high-quality goods sponsored and approved by Plaintiffs.

31. Accordingly, the Duran Duran Mark has achieved secondary meaning as an identifier of high-quality goods.

32. Genuine goods bearing the Duran Duran Mark are legitimately advertised widely and promoted by Plaintiffs, their authorized distributors, and unrelated third parties via the Internet.

33. Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing have become increasingly important to Plaintiffs' overall marketing and consumer education efforts.

34. Thus, Plaintiffs expend significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.

35. Plaintiffs' SEO strategies allow Plaintiffs and their authorized retailers to fairly and legitimately educate consumers about the value associated with Plaintiffs' products and the goods marked with the Duran Duran Mark.

## **DEFENDANTS**

36. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

37. Defendants are individuals or business entities of unknown makeup, each of whom, upon information and belief, either resides or operates in an overseas foreign jurisdiction, redistributes products from the same or similar sources in those locations, or ships goods from the

same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute its products from those locations.

38.    Defendants are engaged in business in Texas but have not appointed an agent for service of process.

39.    Upon information and belief, Defendants have registered, established or purchased, and maintained their Seller IDs.

40.    Defendants target their business activities toward consumers throughout the United States, including within this district, through the simultaneous operation of commercial Internet based e-commerce stores via the Internet marketplace websites under the Seller IDs.

41.    Defendants are the past and present controlling forces behind the sale of products bearing counterfeits and infringements of Plaintiffs' intellectual property rights as described herein, as well as misappropriating Plaintiffs' likenesses or names, while operating and using at least the Seller IDs.

42.    Defendants directly engage in unfair competition with Plaintiffs by advertising, offering for sale, and selling goods bearing counterfeits and infringements of Plaintiffs' intellectual property rights, as well as their personal images or names, to consumers within the United States and this district through Internet based e-commerce stores using, at least, the Seller IDs and additional names, websites, or seller identification aliases not yet known to Plaintiffs.

43.    Defendants have purposefully directed some portion of their illegal activities towards consumers in the state of Texas through the advertisement, offer to sell, sale, or shipment of counterfeit and infringing goods, as well as goods bearing Plaintiffs' personal images or names, into the state.

44.     Upon information and belief, the defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs by providing false or misleading information to the Internet based e-commerce platforms or domain registrar where they offer to sell or sell during the registration or maintenance process related to their respective Seller IDs.

45.     Upon information and belief, many defendants registered and maintained their Seller IDs for the sole purpose of engaging in illegal counterfeiting or other unlawful activities.

46.     Upon information and belief, the defendants will likely continue to register or acquire new seller identification aliases for the purpose of selling and offering for sale counterfeits and infringements of Plaintiffs' intellectual property rights, as well as misappropriate Plaintiffs' images, unless preliminarily and permanently enjoined.

47.     Defendants use their Internet-based businesses to infringe the intellectual property rights of Plaintiffs and others, as well as misappropriate Plaintiffs' personal images for commercial purposes.

48.     Defendants' business names, i.e., their Seller IDs, associated payment accounts, and any other alias seller identification names or e-commerce stores used in connection with the sale of counterfeits and infringements of Plaintiffs' intellectual property rights, as well as their personal images, are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme, as well as their misappropriation of Plaintiffs' personal images, and cause harm to Plaintiffs.

49.     Some of the defendants may use individual seller store names containing the Duran Duran Mark, and these store names are indexed on search engines and compete directly with Plaintiffs for space in search results.

50.     The appearance of the defendants' individual seller stores in search engine results undermines Plaintiffs' efforts to educate consumers about the value of products sold under the Duran Duran Mark,

51.     Defendants are using counterfeits and infringements of Plaintiffs' intellectual property rights, as well as Plaintiffs' personal images or names, to drive Internet consumer traffic to their e-commerce stores operating under their Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiffs' legitimate marketplace and intellectual property rights at Plaintiffs' expense.

52.     Defendants, through the sale and offer to sell counterfeit and infringing products, as well as products bearing Plaintiffs' personal images or names, are directly, and unfairly, competing with Plaintiffs' economic interests in the state of Texas and causing Plaintiffs harm and damage within this jurisdiction.

53.     The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiffs' intellectual property rights and their personal images, resulting in the destruction of the legitimate market sector in which they operate.

54.     Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of Plaintiffs' intellectual property rights, including Plaintiffs' exclusive right to use and license such intellectual property rights, as well as knowledge that the images used were of Plaintiffs, a famous band of the 1980s and thereafter.

## **JOINDER OF DEFENDANTS IN THIS ACTION IS PROPER**

55.     Defendants are the individuals, partnerships, and unincorporated associations set forth on Schedule "A" filed as Exhibit 3 herewith.[2]

---

[2] As the Court is aware, Plaintiffs have voluntarily dismissed various defendants under Rule 41.  *See* Dkt. 16, 19, 23, 26, 27, 28, 30, 31, 36.  Thus, those defendants have been removed from the current Schedule A.

56.     Defendants are promoting, selling, offering for sale and distributing goods bearing counterfeits and confusingly similar imitations of Plaintiffs' intellectual property, as well as Plaintiffs' personal images or names, within this district.

57.     Joinder of all Defendants is permissible based on the permissive party joinder rule of Fed. R. Civ. P. 20(a)(2), which permits the joinder of persons in an action as Defendants where any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all the defendants will arise in the action.

58.     Joinder of the multiple defendants listed in Schedule "A" filed as Exhibit 3 herewith is permitted because Plaintiffs assert rights to relief against these Defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and common questions of law or fact will arise in the action.

59.     Joinder of the multiple defendants listed in Schedule "A" filed herewith serves the interests of convenience and judicial economy, which will lead to a just, speedy, and inexpensive resolution for Plaintiffs, Defendants, and this Court.

60.     Joinder of the multiple defendants listed in Schedule "A" will not create any unnecessary delay, nor will it prejudice any party. On the other hand, severance is likely to cause delays and prejudice Plaintiffs and Defendants alike.

61.     Joinder of the multiple defendants listed in Schedule "A" is procedural only and does not affect the substantive rights of any Defendant listed on Schedule "A".

62.     This court has jurisdiction over the multiple defendants listed in Schedule "A". Venue is proper in this court for this dispute involving the multiple Defendants listed in Schedule "A".

63.    Plaintiffs' claims against the multiple defendants listed in Schedule "A" are all transactionally related.

64.    Plaintiffs are claiming counterfeiting and piracy against Defendants of Plaintiffs' intellectual property rights, as well as misappropriation of Plaintiffs' likenesses or names.

65.    The actions of all the defendants cause indivisible harm to Plaintiffs by Defendants' combined actions engaging in similar counterfeiting and misappropriating conduct when each is compared to the others.

66.    All the defendants' actions are logically related. All the defendants are engaging in the same systematic approach of establishing on-line storefronts to redistribute illegal or unauthorized products from the same or similar sources while maintaining financial accounts that the defendants can easily conceal to avoid any real liability for their actions.

67.    All the defendants are believed to be located in overseas foreign jurisdictions, and acquire their products from overseas foreign jurisdictions, including China.

68.    All the defendants undertake efforts to conceal their true identities from Plaintiffs in order to avoid detection for their illegal counterfeiting and misappropriating activities.

69.    All the defendants have the same or closely related sources for their counterfeit products and products that bear Plaintiffs' misappropriated personal images with some sourcing from the same upstream source and others sourcing from downstream sources that obtain counterfeit and other illegal or unauthorized products from the same upstream sources.

70.    All the defendants take advantage of a set of circumstances; namely, the anonymity and mass reach the internet affords to sell counterfeit goods and goods that misappropriate Plaintiffs' personal images across international borders and violate Plaintiffs' intellectual property rights and misappropriate their images with impunity.

71.    All the defendants have registered their Seller ID's with a small number of on-line platforms for the purpose of engaging in counterfeiting or misappropriation of Plaintiffs' images.

72.    All the defendants use payment and financial accounts associated with their on-line storefronts or the on-line platforms where their on-line storefronts reside.

73.    All the defendants use their payment and financial accounts to accept, receive, and deposit profits from their counterfeiting and misappropriating activities.

74.    All the defendants can easily and quickly transfer or conceal their funds in their payment and financial accounts to avoid detection and liability in the event that Plaintiffs' anti-counterfeiting or anti-misappropriation efforts are discovered, or Plaintiffs obtains a monetary award.

75.    All the defendants violated one or more of Plaintiffs' intellectual property rights or misappropriated one or more of Plaintiffs' personal images or names in the United States by the use of common or identical methods.

76.    All the defendants understand that their ability to profit through anonymous internet stores is enhanced as their numbers increase, even though they may not all engage in direct communication or coordination.

77.    Many Defendants are operating multiple internet storefronts and on-line marketplace seller accounts using different Seller IDs listed on Schedule "A". As a result, there are more Seller IDs than there are Defendants, a fact that will likely emerge in discovery.

78.    Defendants' business names, i.e., their Seller IDs, associated payment accounts, and any other alias seller identification names or e-commerce stores used in connection with the sale of counterfeits and infringements of Plaintiffs' intellectual property rights, as well as products that have misappropriated Plaintiffs' images, are essential components of Defendants' on-line

activities and are one means by which the defendants further their counterfeiting, infringing, and misappropriating scheme and cause harm to Plaintiffs.

79.    Defendants are using counterfeits and infringements of Plaintiffs' intellectual property rights, as well as misappropriated images of Plaintiffs, to drive Internet consumer traffic to their e-commerce stores operating under their Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiffs' legitimate marketplace and intellectual property rights, as well as the legitimate use of their personal images, at Plaintiffs' expense.

80.    Defendants, through the sale and offer to sell counterfeit and infringing products, as well as products bearing Plaintiffs' misappropriated likenesses or names, are directly, and unfairly, competing with Plaintiffs' economic interests in the state of Texas and causing Plaintiffs harm and damage within this jurisdiction.

81.    The natural and intended byproduct of the defendants' logically related actions is the erosion and destruction of the goodwill associated with Plaintiffs' intellectual property and other commercial rights and the destruction of the legitimate market sector in which they operate.

82.    Upon information and belief, at all times relevant hereto, the defendants had actual or constructive knowledge of Plaintiffs' intellectual property rights, including Plaintiffs' exclusive right to use and license such intellectual property rights, as well as knowledge of Plaintiffs' common law right to use and restrict use of their personal images.

## DEFENDANTS' INFRINGING ACTIVITIES

83.    Defendants are promoting, advertising, distributing, selling, or offering for sale cheap copies of Plaintiffs' products in interstate commerce that are counterfeits and infringements of Plaintiffs' intellectual property rights (the "Counterfeit Goods") through at least the Internet based e-commerce stores operating under their Seller IDs.

84.    Specifically, Defendants are using the Duran Duran Mark to initially attract on-line customers and drive them to Defendants' e-commerce stores operating under their Seller IDs.

85.    Defendants are using identical copies of the Duran Duran Mark for different quality goods.

86.    Plaintiffs have used the Duran Duran Mark extensively and continuously before the defendants began offering counterfeit and confusingly similar imitations of Plaintiffs' mark on merchandise.

87.    Upon information and belief, Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiffs' genuine goods.

88.    Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Plaintiffs, despite Defendants' knowledge that they are without authority to use the Duran Duran Mark.

89.    The net effect of Defendants' actions is likely to cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, resulting in consumers believing all the defendants' goods offered for sale on their e-commerce stores are genuine goods originating from, associated with, or approved by Plaintiffs.

90.    Defendants advertise their e-commerce stores, including their Counterfeit Goods offered for sale, to the consuming public via e-commerce stores on, at least, one Internet marketplace website operating under, at least, their Seller IDs.

91.    In so advertising their stores and products, the defendants improperly and unlawfully use the Duran Duran Mark without Plaintiffs' permission.

92.    As part of their overall infringement and counterfeiting scheme, most Defendants are, upon information and belief, concurrently employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of the Duran Duran Mark.

93.    Specifically, the defendants are using counterfeits and infringements of the Duran Duran Mark in order to make their e-commerce stores selling illegal goods appear more relevant and attractive to consumers searching for both Plaintiffs' goods and goods sold by Plaintiffs' competitors online.

94.    By their actions, the defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiffs' genuine goods.

95.    Defendants are causing individual, concurrent and indivisible harm to Plaintiffs and the consuming public by (i) depriving Plaintiffs and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiffs' genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the Duran Duran Mark, and (iii) increasing Plaintiffs' overall cost to market their goods and educate consumers via the Internet.

96.    Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States.

97.    As a result, the defendants are defrauding Plaintiffs and the consuming public for the defendants' own benefit.

98.     Upon information and belief, at all times relevant hereto, the defendants in this action had full knowledge of Plaintiffs' ownership of the Duran Duran Mark, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

99.     Defendants' use of the Duran Duran Mark, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiffs' consent or authorization.

100.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiffs' rights for the purpose of trading on Plaintiffs' goodwill and reputation.

101.     If the defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed.

102.     Defendants' infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase.

103.     Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiffs' genuine goods and the defendants' Counterfeit Goods, which there is not.

104.     Defendants' payment and financial accounts are being used by them to accept, receive, and deposit profits from the defendants' counterfeiting and infringing activities, as well as their unfairly competitive activities connected to their Seller IDs and any other alias e-commerce stores or seller identification names being used or controlled by them.

105.     Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiffs.

106.    Plaintiffs are suffering irreparable injury and have suffered substantial damages as a result of the defendants' unauthorized and infringing activities and their wrongful use of Plaintiffs' intellectual property rights.

107.    If the defendants' counterfeiting, infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed.

108.    The harm and damages sustained by Plaintiffs have been directly and proximately caused by the defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

109.    Defendants have sold their infringing products in competition directly with Plaintiffs' genuine products.

110.    Plaintiffs should not have any competition from the defendants because Plaintiffs never authorized the defendants to use Plaintiffs' trademark.

111.    Plaintiffs have no adequate remedy at law.

## **DEFENDANTS' MISAPPROPRIATING ACTIVITIES**

112.    Defendants have appropriated Plaintiffs' names or likenesses for the value associated with it.

113.    Defendants' use of Plaintiffs' names or likenesses is not in an incidental manner or for a newsworthy purpose.

114.    Plaintiff or Plaintiffs can be identified from Defendants' publication of their names or likenesses.

115.    Defendants obtain some advantage or benefit through their use of Plaintiffs' names or likenesses.

116.    Plaintiffs' have no adequate remedy at law.

## COUNT I – TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

117.    Plaintiffs incorporate the allegations of paragraphs 1 through 116 of this Amended Complaint as if fully set forth herein.

118.    This is an action for trademark counterfeiting and infringement against the defendants based on their use of counterfeit and confusingly similar imitations of the Duran Duran Mark in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Counterfeit Goods.

119.    Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing or using counterfeits or infringements of the Duran Duran Mark.

120.    Defendants are continuously infringing and inducing others to infringe the Duran Duran Mark by using it to advertise, promote, sell, and offer to sell counterfeit and infringing goods.

121.    Defendants' concurrent counterfeiting and infringing activities are likely to cause, and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of the defendants' Counterfeit Goods.

122.    Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiffs and are unjustly enriching the defendants with profits at Plaintiffs' expense.

123.    Defendants' above-described illegal actions constitute counterfeiting and infringement of the Duran Duran Mark in violation of Plaintiffs' rights under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

124.    Plaintiffs have suffered and will continue to suffer irreparable injury and damages due to the defendants' above-described activities if the defendants are not preliminarily and permanently enjoined.

125.    If not preliminarily and permanently enjoined, the defendants will continue to wrongfully profit from their illegal activities.

### COUNT II – FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

126.    Plaintiffs incorporate the allegations of paragraphs 1 through 116 of this Amended Complaint as if fully set forth herein.

127.    Upon information and belief, the defendants' Counterfeit Goods bearing, offered for sale or sold using copies of Plaintiffs' Duran Duran Mark have been widely advertised and offered for sale throughout the United States via at least one Internet marketplace website.

128.    Defendants' Counterfeit Goods bearing, offered for sale, or sold using copies of Plaintiffs' Duran Duran Mark are virtually identical in appearance to Plaintiffs' genuine goods.

129.    Defendants' Counterfeit Goods are different in quality from Plaintiffs' goods and are of much lower quality.

130.    Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

131.    Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, or sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiffs' detriment.

132.    Defendants have authorized infringing uses of the Duran Duran Mark in the defendants' advertisement and promotion of their counterfeit and infringing branded goods.

133.    Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

134.    Defendants are using counterfeits and infringements of the Duran Duran Mark in order to unfairly compete with Plaintiffs and others for space within organic search engine results and social media results, thereby jointly depriving Plaintiffs of a valuable marketing and educational tool which would otherwise be available to Plaintiffs and reducing the visibility of Plaintiffs' genuine goods on the internet and across social media platforms.

135.    Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

136.    Plaintiffs have no adequate remedy at law and have sustained indivisible injury and damage caused by the defendants' concurrent conduct.

137.    Absent an entry of an injunction by this Court, the defendants will continue to wrongfully reap profits and Plaintiffs will continue to suffer irreparable injury to their goodwill and business reputation, as well as monetary damages.

## COUNT III – COMMON LAW UNFAIR COMPETITON

138.    Plaintiffs incorporate the allegations of paragraphs 1 through 116 of this Amended Complaint as if fully set forth herein.

139.    This is an action against the defendants based on their promotion, advertisement, distribution, sale or offering for sale of goods bearing marks that are virtually identical to the Duran Duran Mark in violation of Texas's common law of unfair competition.

140.    Defendants' activities complained of herein constitute unfair methods of competition.

141.    Specifically, the defendants are promoting and otherwise advertising, selling, offering for sale or distributing goods using or bearing counterfeits and infringements of the Duran Duran Mark.

142.    Defendants are also using counterfeits and infringements of the Duran Duran Mark to unfairly compete with Plaintiffs and others for (1) space in search engine and social media results across an array of search terms and (2) visibility on the Internet.

143.    Defendants' infringing activities are likely to cause, and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of the defendants' e-commerce stores as a whole and all products sold therein by their use of the Duran Duran Mark.

144.    Plaintiffs have no adequate remedy at law and is suffering irreparable injury and damages as a result of the defendants' actions.

## <u>COUNT IV – COMMON LAW TRADEMARK INFRINGEMENT</u>

145.    Plaintiffs incorporate the allegations of paragraphs 1 through 116 of this Amended Complaint as if fully set forth herein.

146.    This is an action for common law trademark infringement against the defendants based on their promotion, advertisement, offering for sale, or sale of their Counterfeit Goods bearing Plaintiffs' Duran Duran Mark.

147.    Plaintiffs are the owners of all common law rights in and to the Duran Duran Mark.

148.    Defendants, upon information and belief, are promoting, and otherwise advertising, distributing, offering for sale, or selling goods bearing infringements of the Duran Duran Mark.

149.    Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of the defendants' Counterfeit Goods bearing the Duran Duran Mark.

150.    Plaintiffs have no adequate remedy at law and are suffering damages and irreparable injury as a result of the defendants' actions.

## COUNT V – COMMON LAW MISAPPROPRIATION OF IMAGE

151.    Plaintiffs incorporate the allegations of paragraphs 1 through 116 of this Amended Complaint as if fully set forth herein.

152.    This is an action for common law misappropriation of image against the defendants based on their promotion, advertisement, offering for sale, or sale of goods bearing an individual Plaintiff or all Plaintiffs' names or likeness.

153.    Plaintiffs, each and as a group, have all common law rights in and to their personal images, including their names and likeness.

154.    Defendants are using Plaintiffs' names or likenesses in a manner that is not incidental or for a newsworthy purpose.

155.    Plaintiff or Plaintiffs can be identified from the defendants' publication of their individual or group images.

156.    Defendants, upon information and belief, are obtaining some advantage or benefit through their use of Plaintiffs' names or likenesses.

WHEREFORE, Plaintiffs demand judgment on all Counts of this Amended Complaint and an award of equitable relief and monetary relief against the defendants as follows:

a.    Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C.

§ 1116 and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents,

representatives, servants, employees, attorneys and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the Duran Duran Mark; from using the Duran Duran Mark, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by authorized by, endorsed by, or in any way associated with Plaintiffs; from falsely representing themselves as being connected with Plaintiffs, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade or the purchasing public to believe any goods or services of Defendants, are in any way endorsed by, approved by, or associated with Plaintiffs; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the Duran Duran Mark in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiffs, or in any way endorsed by Plaintiffs and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiffs' names or trademarks and from otherwise unfairly competing with Plaintiffs; from using Plaintiffs' images, individually or as a group, in connection with the sale of any unauthorized goods.

b.  Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of the injunction issued by this Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale or distribution of non-genuine goods bearing or using counterfeits of the Duran Duran Mark or bearing any image of Plaintiffs' as individuals or a group.

c.  Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiffs' request, the applicable governing Internet marketplace website operators or administrators for the Seller IDs who are provided with notice of an injunction issued by this Court disable and cease facilitating access to the Seller IDs and any other alias seller identification names being used or controlled by Defendants to engage in the business of marketing, offering to sell, or selling goods bearing counterfeits and infringements of the Duran Duran Mark, or bearing Plaintiffs' images individually or as a group.

d.  Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon Plaintiffs' request, any messaging service and Internet marketplace website operators, administrators, registrar or top level domain (TLD) registry for the Seller IDs who are provided with notice of an injunction issued by this Court identify any e-mail address known to be associated with the defendants' respective Seller IDs.

e.  Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that upon Plaintiffs' request, any Internet marketplace

website operators or administrators who are provided with notice of an injunction issued by this Court permanently remove from the multiple platforms, which include, inter alia, a direct platform, group platform, seller product management platform, vendor product management platform, and brand registry platform, any and all listings and associated images of goods bearing counterfeits or infringements of the Duran Duran Mark or bearing Plaintiffs' images via the e-commerce stores operating under the Seller IDs, and upon Plaintiffs' request, any other listings and images of goods bearing counterfeits or infringements of the Duran Duran Mark or images of Plaintiffs linked to the same sellers or linked to any other alias seller identification names being used or controlled by the defendants to promote, offer for sale or sell goods bearing or using counterfeits or infringements of the Duran Duran Mark or bearing any images of a Plaintiff, as an individual, or Plaintiffs as a group.

f.  Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and this Court's inherent authority that, upon Plaintiffs' request, Defendants and any Internet marketplace website operators or administrators who are provided with notice of an injunction issued by this Court immediately cease fulfillment of and sequester all goods of each Defendant bearing the Duran Duran Mark or bearing an image of any Plaintiff in its inventory, possession, custody, or control, and surrender those goods to Plaintiffs.

g.  Entry of an Order requiring the defendants to correct any erroneous impression the consuming public may have derived concerning the nature, characteristics, or

qualities of their products, including without limitation, the placement of corrective advertising and providing written notice to the public.

h.  Entry of an Order requiring the defendants to account to and pay Plaintiffs for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiffs be trebled, as provided for under 15 U.S.C.§ 1117, or, at Plaintiffs' election with respect to Count I, that Plaintiffs be awarded statutory damages from each defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used or product bearing such sold, offered for sale, or distributed, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

i.  Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiffs' costs and reasonable attorneys' fees and investigative fees, associated with bringing this action, including the cost of corrective advertising.

j.  Entry of an Order that, upon Plaintiffs' request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and sub-accounts used in connection with the Seller IDs, or other alias seller identification or e-commerce store names used by the defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts that transfer funds into the same financial institution account(s)

and remain restrained until such funds are surrendered to Plaintiffs in partial satisfaction of the monetary judgment entered herein.

k.  Entry of an award of pre-judgment interest on the judgment amount.

l.  Entry of an Order for any further or other relief as the Court may deem just and proper.

Dated: December 19, 2025

Respectfully submitted,

**BUETHER JOE & COUNSELORS, LLC**

By:    */s/ Kenneth P. Kula*
       Christopher M. Joe
       State Bar No. 00787770
       Chris.Joe@BJCIPLaw.com
       Kenneth P. Kula
       State Bar No. 24004749
       Ken.Kula@BJCIPLaw.com

       1700 Pacific Avenue
       Suite 4750
       Dallas, Texas 75201
       Telephone:    (214) 466-1272
       Facsimile:    (214) 635-1828

       **ATTORNEY FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of December, 2025, a true and correct copy of the foregoing was electronically filed using the U.S. District Court's cm/ECF system, and Service is being provided to all Defendants or their counsel of record as allowed by the Court. In addition, other counsel, if any, will be served via e-mail, facsimile or U.S. regular mail.

       */s/ Kenneth P. Kula*
       Kenneth P. Kula