**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| NICHOLAS RHODES, LE BON SIMON, JOHN TAYLOR, AND ROGER TAYLOR,<br><br>    *Plaintiffs,*<br><br>v.<br><br>THE INDIVIDUALS, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>    *Defendants.* | Case No. 4:25-cv-01275<br><br>**JUDGE MICHAEL J. TURNCALE** |

**PLAINTIFFS' MOTION FOR ENTRY OF PRELIMINARY INJUNCTION**

i

# **Table of Contents**

I.      INTRODUCTION ..................................................................................................... 1

II.     STATEMENT OF FACTS ...................................................................................... 3

   A.     BACKGROUND ON PLAINTIFFS ................................................................ 3

   B.     PLAINTIFFS' TRADEMARK RIGHTS ........................................................ 4

   C.     DEFENDANTS' COUNTERFEITING, INFRINGING & OTHER ACTIVITIES ........... 5

   D.     THE IRREPARABLE HARM TO PLAINTIFFS IN THE FORM OF PRICE EROSION, DAMAGE TO REPUTATION, AND LOSS OF GOODWILL NOT COMPENSABLE BY MONETARY DAMAGES ALONE ...................................................................... 6

III.    ARGUMENT ........................................................................................................... 8

   A.     A PRELIMINARY INJUNCTION PREVENTS PLAINTIFFS' INJURY ....................... 8

   B.     STANDARD FOR A PRELIMINARY INJUNCTION ...................................... 9

     1.     Probability of Success on the Merits of Plaintiffs' Claims ........................... 10

     2.     Plaintiffs are Suffering Irreparable Injury .................................................... 15

     3.     The Balance of Hardship Tips Sharply in Plaintiffs' Favor. ....................... 15

     4.     The Relief Sought Serves the Public Interest. .............................................. 16

   C.     The Equitable Relief Sought is Appropriate. .................................................. 16

     1.     Entry of an Order Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiffs' Trademark and Images is Appropriate ........................................................ 16

     2.     Entry of an Order Continuing the Prohibited Transfer of the Seller IDs During the Pendency of this Action is Appropriate. .................................................... 17

     3.     A Preliminary Injunction Restraining Transfer of Assets is Appropriate .................... 18

   D.     A Minimal Bond Should Secure the Injunction ............................................. 21

IV.     CONCLUSION ...................................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

Cases

*Am. Rice, Inc. v. Producers Rice Mill, Inc.*,
  518 F.3d 321 (5th Cir. Feb. 22, 2008) ................................................................. 11

*Animaccord Ltd. v. Individuals*,
  No. 4:25-cv-00489, 2025 WL 1678970 (E.D. Tex. June 13, 2025) .............................. 17, 18, 20

*Bd. of Supervisors for La. State Agric. & Mech. College v. Smack Apparel*,
  550 F.3d 465 (5th Cir. 2008) ................................................................. 11

*Busch v. Basic Organics, Inc.*,
  Case No. 3:06-CV-2261, 2007 WL 603385 (N.D. Tex. Feb. 27, 2007) .................. 15

*Carnival Corp. v. Seaescape Casino Cruises, Inc.*,
  74 F. Supp. 2d 1261 (S.D. Fla. 1999) ................................................................. 13

*Dallas Cowboys Football Club, Ltd. v. America's Team Properties, Inc.*,
  616 F. Supp. 2d 622 (N.D. Tex. 2009) ................................................................. 12

*Elvis Presley Enters., Inc. v. Capece*,
  141 F.3d 188 (5th Cir. 1998) ................................................................. 13

*Federal Trade Commission v. United States Oil and Gas Corp.*,
  748 F.2d 1431 (11th Cir. 1984) ................................................................. 19

*Ferrellgas Ptnrs., L.P. v. Barrow*,
  143 Fed. Appx. 180 (11th Cir. 2005) ................................................................. 15

*Future Proof Brands, L.L.C. v. Molson Coors Beverage Company*,
  982 F.3d 280 (5th Cir. 2020) ................................................................. 10

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
  527 U.S. 308 (1999) ................................................................. 19

*International Star Class Yacht Racing Ass'n v. Tommy Hilfiger USA, Inc.*,
  80 F.3d 749 (2d Cir. 1996) ................................................................. 18

*Joseph v. Jefferson*,
  No. 1:20-cv-250, 2025 WL 2555481 (E.D. Tex. 2025) ....................................... 10

*Juul Labs, Inc. v. Gladys Smoke Shop, Inc.*,
  No. 1:20-cv-353, 2021 WL 7184950 (E.D. Tex. Sept. 7, 2021) .............................. 12

*Kemp v. Peterson,*
940 F.2d 110 (4th Cir. 1991) .................................................................................... 20

*Lakedreams v. Taylor,*
932 F.2d 1103 (5th Cir. 1991) .................................................................................... 10

*Levi Strauss & Co.,*
51 F.3d ..................................................................................................... 19, 20, 21

*Marathon Mfg. Co. v. Enerlite Prods. Corp.,*
767 F.2d 214 (5th Cir. 1985) .................................................................................... 14

*Mason Tenders Dist. Council Pension Fund v. Messera,*
1997 WL 223077 (S.D.N.Y. May 7, 1997) .............................................................. 19

*Matthews v. Wozencraft,*
15 F.3d 432 (5th Cir. 1994) ...................................................................................... 15

*McDonald's Corp. v. Robertson,*
147 F.3d 1301 (11th Cir. 1998) ................................................................................ 15

*Microsoft Corp. v. Wholesale Club, Inc.,*
129 F. Supp. 2d 995 (S.D. Tex. 2000) ...................................................................... 12

*Nailtiques Cosmetic Corp. v. Salon Sciences, Corp.,*
1997 WL 244746, 41 U.S.P.Q.2d 1995 (S.D. Fla. 1997) ......................................... 16

*Paulsson Geophysical Services, Inc. v. Sigmar,*
529 F.3d 303 (5th Cir. 2008) .................................................................................... 11

*PetMed Express, Inc. v. MedPets.com, Inc.,*
336 F. Supp. 2d 1213 (S.D. Fla. 2004) ..................................................................... 14

*Playboy Ent., Inc. v. P.K. Sorren Export Co. Inc. of Florida,*
546 F. Supp. 987 (S.D. Fla. 1982) ............................................................................ 13

*Reebok Int'l Ltd. v. Marnatech Enter.,*
737 F. Supp. 1521 (S.D. Cal. 1989) ..................................................................... 19, 20

*Reebok Int'l Ltd.,*
970 F.2d .............................................................................................................. 20, 21

*Republic of Philippines v. Marcos,*
862 F.2d 1355 (9th Cir. 1988) .................................................................................. 21

*Rex Real Estate I, L.P. v. Rex Real Estate Exchange, Inc.*,
   80 F.4th 607 (5th Cir. 2023) ............................................................................... 13

*S.E.C. v. Lauer*,
   445 F. Supp. 2d 1362 (S.D. Fla. 2006) ............................................................... 20

*SEC v. ETS Payphones*,
   408 F.3d 727 (11th Cir. 2005) ............................................................................. 18

*Soc'y of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs*,
   41 F.3d 223 (5th Cir. 1995) ................................................................................. 14

*Tinnus Enterprises, LLC v. Telebrands Corp.*,
   No. 6:17-cv-00170, 2018 WL 3455543 (E.D. Tex. July 16, 2018) ........................... 9

*Turner Greenberg Assocs. v. C&C Imps.*,
   320 F. Supp. 2d 1317 (S.D. Fla. 2004) .......................................................... 12, 13

*Two Pesos, v. Taco Cabana, Inc.*,
   505 U.S. 763 (1992) ............................................................................................ 14

*Xtreme Lashes, L.L.C. v. Xtended Beauty, Inc.*,
   576 F.3d 221 (5th Cir. 2009) ............................................................................... 13

Statutes

15 U.S.C. § 1114 ........................................................................................................ 10
15 U.S.C. § 1114(1) .................................................................................................... 10
15 U.S.C. § 1116 .......................................................................................................... 1
15 U.S.C. § 1116(a) ................................................................................................... 16
15 U.S.C. § 1117 .................................................................................................. 18, 19
15 U.S.C. § 1117(a) ................................................................................................. 2, 18
15 U.S.C. § 1125(a) ................................................................................................... 14
15 U.S.C. § 1127 ........................................................................................................ 11
28 U.S.C. § 1651(a) ..................................................................................................... 1

Rules

Fed. R. Civ. P. 65 ................................................................................................... 1, 19
Fed. R. Civ. P. 65(a) ................................................................................................... 8
Fed. R. Civ. P. 65(c) ................................................................................................. 21

Plaintiffs by and through their undersigned counsel, hereby move this Honorable Court for a preliminary injunction, which is to include an order maintaining the restraints from the Court's previously issued temporary restraining order, (Dkt. 15),[1] on the transfer of assets by the defendants, the individuals, partnerships, and unincorporated associations identified on Schedule "A" ("Defendants"), which was filed along with Plaintiff's Amended Complaint (Dkt. 37), pursuant to 15 U.S.C. § 1116, Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C. § 1651(a), and in support thereof state as follows:

## I.    INTRODUCTION

Defendants are knowingly and intentionally promoting, advertising, distributing, offering for sale, and selling goods bearing counterfeits and confusingly similar imitations of Plaintiffs' registered trademark, as well as Plaintiffs' individual or group images, within this district and throughout the United States by operating e-commerce stores established via third-party marketplace platforms under their seller identification names identified on Schedule "A" filed with Plaintiffs' Amended Complaint on December 20, 2025 (the "Seller IDs"). *See generally* (Dkt. 37-3.)

Specifically, Plaintiffs have obtained evidence clearly demonstrating that: (a) Defendants are engaged in the advertisement, offering for sale, or sale of counterfeit and infringing versions of Plaintiffs' goods, as well as products that misappropriate Plaintiffs' names and likenesses; and (b) Defendants accomplish their sales of counterfeit and infringing goods and other products at

---

[1] Although a movant often combines a motion for temporary restraining order and a motion for preliminary injunction in one filing, to ensure Plaintiffs did not technically violate the local rules, they have chosen to file separate motions. *See* E.D. Tex. Loc. Civ. R. 7(a) ("Each pleading, motion, or response to a motion **must be filed as a separate document**, except for motions for alternative relief (e.g., a motion to dismiss or, alternatively, to transfer).") (emphasis added).

issue via the Internet through the use of, at least, e-commerce stores operated via Internet marketplace platforms under the Seller IDs.

Based on this evidence, Plaintiffs' Amended Complaint alleges claims for trademark counterfeiting and infringement, false designation of origin, common law unfair competition, common law trademark infringement, and common law misappropriation of image.

Defendants' unlawful activities have deprived and continue to deprive Plaintiffs of their right to determine the manner in which their trademark and images are presented to the public. Defendants have and continue to wrongfully trade and capitalize on Plaintiffs' reputation, recognition, goodwill, name, likeness, and the commercial value of Plaintiffs' trademark or personal images. By their activities, Defendants are defrauding Plaintiffs, certain non-party businesses, and the consuming public for Defendants' own benefit.

Defendants should not be permitted to continue their unlawful activities, which are causing Plaintiffs ongoing irreparable harm. Accordingly, Plaintiffs are seeking the entry of a preliminary injunction, prohibiting Defendants' further wrongful use of Plaintiffs' trademark, names, and likenesses until the Court can decide Plaintiffs' claims at trial. Plaintiffs also seek to restrain the illegal profits generated by Defendants.

Plaintiffs have obtained evidence that Defendants are operating through their Seller IDs via Amazon, eBay, Etsy, TeePublic, Redbubble, and others, including custom platforms. All these seller platforms process payments or have related companies that perform payment processing for them.

The Lanham Act allows Plaintiffs to recover the illegal profits gained through the defendants' distribution or sales of counterfeit and infringing goods. *See* 15 U.S.C. § 1117(a).

2

In light of the inherently deceptive nature of the counterfeiting business, Plaintiffs have good reason to believe the defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court after the TRO expires on December 30, 2025, *see* (Dkt. 24 at 1-2), unless they are further restrained. Accordingly, to preserve the disgorgement remedy, Plaintiffs seek an injunctive order that continues to restrain the defendants' assets, including specifically, funds transmitted through payment processors for the platforms on which the defendants engage in their illegal activities.

## II.    STATEMENT OF FACTS

### A.  BACKGROUND ON PLAINTIFFS

1.     Plaintiffs are members of Duran Duran, a Grammy Award winning English rock band from Birmingham, United Kingdom. (Dkt. 12-1, Laister Decl. ¶ 2).

2.     Plaintiffs' products are sold through their own official website and other authorized retailers. *Id.* ¶ 6. Plaintiffs offer for sale and sell their products within the state of Texas, including this district, and throughout the United States. *Id*. Online sales of Plaintiffs' products via the web represent a significant portion of their business. *Id.* ¶ 15.

3.     Plaintiffs suffer irreparable harm to their brands' goodwill, as well as a direct monetary loss at the hands of counterfeiters and infringers or others who misappropriate their images, such as the defendants herein. *Id.* ¶ 9. This harms Plaintiffs, it dupes the consuming public, and the defendants earn substantial profits therefrom. *Id.* ¶¶ 9, 17.

4.     In order to combat the harm caused by the combined actions of the defendants and others engaging in similar infringing or other unlawful conduct, Plaintiffs expend significant resources in connection with their intellectual-property-related enforcement efforts, including legal fees and investigative fees. *Id.* ¶¶ 7-8.

### B.  PLAINTIFFS' TRADEMARK RIGHTS

5.      Plaintiffs own the "Duran Duran" trademark, U.S. Reg. No. 5,568,570 in International Classes 003, 006, 009, 014, 016, 021, 025, 041, registered on September 25, 2018, which is valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Duran Duran Mark").  *Id.* ¶ 3; Exhibit 1 hereto.

6.      The Duran Duran Mark consists of the band's name, "Duran Duran". This mark was originally registered in the United Kingdom, Foreign Reg. No. 017178476 and claims a priority date of September 5, 2017. The Duran Duran Mark is used in connection with the manufacture and distribution of Plaintiffs' high-quality goods. *Id.* ¶ 4; Exhibit 1 to Am. Compl.

7.      The Duran Duran Mark is vital to Plaintiffs' business, as the trademark upholds the image and reputation of Plaintiffs' brand and their associated products, which are of outstanding quality, design, and performance. *Id.* ¶ 9.

8.      The goodwill associated with the Duran Duran Mark is of incalculable and inestimable value and is vital to Plaintiffs' business. *Id.* ¶¶ 6-9. Plaintiffs have expended substantial time, money, and other resources developing, advertising, and otherwise promoting the Duran Duran Mark in the United States in connection with Plaintiffs' goods. *Id.* ¶ 7.

9.      Plaintiffs actively police and enforce the Duran Duran Mark. *Id.* ¶ 8. Genuine products with the Duran Duran Mark or Plaintiffs' images are advertised and promoted by Plaintiffs, authorized distributors, and third parties on the Internet. *Id.* ¶ 6. Visibility on the Internet, including in search engines like Google, Yahoo! and Bing, is important to Plaintiffs' overall marketing and consumer education efforts. *Id.* ¶ 15. Plaintiffs invest in Internet marketing and consumer education, including search engine optimization ("SEO") strategies, that educate consumers about the value of Plaintiffs' products and the Raydur Mark. *Id.*

4

## C.  DEFENDANTS' COUNTERFEITING, INFRINGING & OTHER ACTIVITIES

10.    The overwhelming success of Plaintiffs' products resulted in counterfeiting by individuals and entities unlawfully using Plaintiffs' images and the trademark and goodwill built by Plaintiffs to sell cheap imitation counterfeits or infringements of Plaintiffs' trademark and other unauthorized products. *Id.* ¶ 9. Neither the Duran Duran Mark nor any of Plaintiffs' intellectual-property-related rights were ever assigned or licensed to any of the defendants. *Id.* ¶ 10.

11.    Despite Defendants' lack of authority, they are promoting, advertising, distributing, selling or offering for sale, through their respective Seller IDs, goods bearing counterfeit and infringing copies of the Duran Duran Mark, as well as products bearing Plaintiffs' names or likenesses without authorization ("Defendants' Goods"). *Id.* ¶ 10.

12.    Plaintiffs' anticounterfeiting program regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. *Id.* ¶¶ 11-13. Plaintiffs retained a third party to investigate the sale of counterfeit Duran Duran branded and other unauthorized products by Defendants. *Id.* ¶ 11. Plaintiffs' investigator accessed the defendants' Internet-based e-commerce stores operating under their seller identification or store names. *Id.* ¶ 12. Plaintiffs' investigator placed orders for the purchase of various products offered for sale bearing or suspected to be bearing the Duran Duran Mark at issue or Plaintiffs' images in this action from each Defendant. *Id*.

13.    Plaintiffs or someone under their supervision captured detailed webpages for each Defendant reflecting each counterfeit or infringing product bearing counterfeits and infringements of the Duran Duran Mark or bearing Plaintiffs' images. *Id.* ¶ 13; Schedule E attached thereto. These webpages show that the defendants slavishly copy the Duran Duran Mark or images and offer Defendants' Goods for sale under identical marks indistinguishable to consumers, both at the

5

point of sale and post-sale. *Id*. True and correct copies of the webpages captured and downloaded showing the counterfeit, infringing or other unauthorized products were attached to Plaintiffs' Motion for TRO as Composite Schedule E.

14.     Defendants created a false association between their counterfeit and infringing goods, their e-commerce stores, and Plaintiffs, and this false association causes Plaintiffs irreparable harm and damage. *Id.* ¶¶ 10, 13, 17.

15.     Plaintiffs or someone under their supervision reviewed and visually inspected the detailed webpage captures and photographs reflecting the Plaintiffs' branded products and determined the products were not genuine, unauthorized versions of Plaintiffs' goods. *Id.* ¶ 13; Schedule E attached thereto.

**D.     THE IRREPARABLE HARM TO PLAINTIFFS IN THE FORM OF PRICE EROSION, DAMAGE TO REPUTATION, AND LOSS OF GOODWILL NOT COMPENSABLE BY MONETARY DAMAGES ALONE.**

16.     Defendants are selling their infringing goods or otherwise unlawful products to consumers within this district and throughout the United States. *Id*. ¶ 10, Dkt. 12-2, Kula Decl. ¶¶ 9-11. Defendants make substantial sums of money preying on members of the public, many of whom have no knowledge that the defendants are defrauding them. It is estimated that the defendants are responsible for thousands of counterfeit or misappropriated products sold using the Duran Duran Mark or Plaintiffs' unauthorized images. Each sale results in a direct loss to Plaintiffs.

17.     Defendants falsely represent that their counterfeit, infringing or other goods are genuine, authentic, endorsed, or authorized by Plaintiffs. (Dkt. 12-1, Laister Decl. ¶¶ 10, 16). Defendants' Internet activities infringe on Plaintiffs' intellectual property rights and their right to publicity. *Id*. The Seller IDs and associated payment accounts are a substantial part of the means

by which the defendants further their scheme and cause harm to Plaintiffs. (Dkt. 12-2, Kula Decl. ¶ 19).

18.     As the illegal marketplace for the Duran Duran Mark and unauthorized product grows on the Internet, the legitimate marketplace for authentic Plaintiffs' products shrinks. (Dkt. 12-1, Laister Decl. ¶ 16). Monetary damages cannot adequately compensate Plaintiffs for ongoing infringement or misappropriation because monetary damages fail to address the loss of control and damage to Plaintiffs' reputation, goodwill and image. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to Plaintiffs' reputation and goodwill by acts of infringement or other unlawful activity.

19.     Plaintiffs' goodwill, reputation, and image are irreparably damaged when the Duran Duran Mark or Plaintiffs' names or likenesses are used on goods not authorized, produced or manufactured by Plaintiffs. *Id.* ¶¶ 16-17. Moreover, brand confidence is damaged, which can result in the loss of future sales and market share. *Id.* ¶ 16.  The extent of harm to Plaintiffs' reputation, goodwill, and image, as well as the possible diversion of customers due to loss in brand confidence are largely unquantifiable. Plaintiffs are further irreparably harmed because counterfeiters and other wrongdoers take away Plaintiffs' ability to control the nature and quality of Counterfeit or other Unauthorized Products. *Id.* ¶ 17.

20.     Loss of quality control over goods bearing the Duran Duran Mark or Plaintiffs' images and, in turn, loss of control over the Duran Duran Mark or Plaintiffs' reputation, is neither calculable nor precisely compensable. The sale of counterfeit, infringing, and other unlawful products bearing the Duran Duran Mark or Plaintiffs' images causes consumer confusion that weakens the Duran Duran Mark and Plaintiffs' brand recognition and reputation. *Id.* ¶ 16. Mistake

and confusion will cause consumers to believe Plaintiffs offer low-quality products; confused consumers who buy inferior quality infringing products thinking they are genuine undermines Plaintiffs' reputation, image and goodwill.[2] *Id.*

21.    Plaintiffs are further irreparably damaged due to a loss of exclusivity. Plaintiffs' extensive marketing and innovative designs are aimed at growing and sustaining sales. The Duran Duran Mark and Plaintiffs' images are distinctive and signify to consumers that the products exclusively originate from Plaintiffs. When counterfeiters use the Duran Duran Mark or Plaintiffs' misappropriated images on goods without authorization, the exclusivity of the Duran Duran Mark or Plaintiffs' products, as well as Plaintiffs' reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales. *Id.* ¶¶ 16-17.

## III.    ARGUMENT

### A.    A PRELIMINARY INJUNCTION PREVENTS PLAINTIFFS' INJURY

A preliminary injunction may be granted as long as notice is given to the adverse party. Fed. R. Civ. P. 65(a). Entry of a preliminary injunction is warranted here. Plaintiffs have shown that the defendants fraudulently promote, advertise, sell, or offer for sale goods bearing counterfeits and infringements of the Duran Duran Mark as well as products that bear Plaintiffs' images without authorization via their e-commerce stores using the Seller IDs, and are creating a false association in the minds of consumers between Defendants and Plaintiffs. Plaintiffs have shown Defendants are wrongfully using counterfeits and infringements of the Duran Duran Mark

---

[2] Even if a consumer knows she is buying counterfeit goods, prospective consumers who see those goods used by others may mistakenly believe such goods to be genuine and may consequently develop a poor impression of Plaintiffs' products. Such post-sale confusion results in further damage to Plaintiffs' reputation and correlates to a loss of unquantifiable future sales.

and Plaintiffs' names or likenesses to increase consumer traffic to the defendants' illegal operations.

The entry of a preliminary injunction will stop the defendants' allegedly wrongful conduct and preserve the status quo until such time as a trial can be held. *See Tinnus Enterprises, LLC v. Telebrands Corp.*, No. 6:17-cv-00170, 2018 WL 3455543, at *1 (E.D. Tex. July 16, 2018) (stating "the purpose of the preliminary injunction against Defendants—to maintain the status quo until the resolution of the litigation"). Absent a preliminary injunction, the defendants can and, based upon Plaintiffs' counsel's experience, will significantly alter the status quo before the Court can determine the parties' respective rights. The Internet e-commerce stores are under the defendants' complete control, and the defendants can change ownership or e-commerce store data and content, redirect consumer traffic, change payment accounts, and transfer assets and ownership of the Seller IDs at virtually a moment's notice. *See* (Dkt. 12-2, Kula Decl. ¶ 13.) Defendants can easily and quickly transfer and secret the funds sought to be restrained and thereby thwart the Court's ability to grant meaningful relief. *Id*.

The defendants engage in illegal counterfeiting, infringing, and other activities. The defendants' assets will be unavailable for recovery or an accounting of profits without the entry of an injunction. The business of the defendants is built on the deliberate misappropriation of rights and property belonging to others. Thus, a preliminary injunction is necessary.

### B.    STANDARD FOR A PRELIMINARY INJUNCTION

In this Circuit, the standard for obtaining a preliminary injunction requires establishing four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs the threatened harm to the defendant; and (4) that the preliminary injunction will not

disserve the public interest. *See Joseph v. Jefferson*, No. 1:20-cv-250, 2025 WL 2555481, at *1 (E.D. Tex. 2025) (citing *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991)). Plaintiffs' evidence establishes all the foregoing relevant factors, which clearly favors granting Plaintiffs' motion for preliminary injunction to maintain the status quo until the parties' bench trial.

### 1.  Probability of Success on the Merits of Plaintiffs' Claims

#### a)  Likelihood of Success on Counterfeiting Claim.

Liability for trademark infringement is established when, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. Plaintiff must demonstrate (1) ownership of the trademark at issue; (2) Defendant's use of the trademark is without Plaintiff's authorization; and (3) Defendant's use is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of Defendant's Goods. *See* 15 U.S.C. § 1114(1). Plaintiffs' evidence satisfies these requirements of 15 U.S.C. § 1114.

The Duran Duran Mark is owned by Plaintiffs and registered on the Principal Register of the United States Patent and Trademark Office. (Dkt. 12-1, Laister Decl. ¶ 3). Defendants have never had the right or authority to use the Duran Duran Mark. *Id.* ¶ 10. Thus, the first two elements have been met.

With respect to likelihood of confusion, the Fifth Circuit considers the following "digits of confusion:" (1) the type of mark infringed; (2) the similarity between the marks; (3) the similarity of the products; (4) the identity of the retail outlets and purchasers; (5) the identity of the advertising media used; (6) the defendant's intent; (7) evidence of actual confusion; and (8) the degree of care exercised by potential purchasers. *Future Proof Brands, L.L.C. v. Molson Coors*

10

*Beverage Company*, 982 F.3d 280, 289 (5th Cir. 2020). Although the "bad intent" and "actual confusion" digits possess particular prominence, a finding of likelihood of confusion need not be supported by a majority of the digits, and district courts may weigh those digits differently from case to case, depending on the particular facts and circumstances. *Id*

### (1)    Strength of Mark.

The strength of a trademark is determined by two factors: the conceptual strength of the mark "spectrum," from "generic and descriptive" on one end to "arbitrary and fanciful" on the other; and (2) "the standing of the mark in the marketplace." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 330 (5th Cir. Feb. 22, 2008). "Generally, the stronger the mark, the greater the likelihood that consumers will be confused by competing uses of the mark." *Bd. of Supervisors for La. State Agric. & Mech. College v. Smack Apparel*, 550 F.3d 465, 479 (5th Cir. 2008). Here, the asserted Duran Duran Mark is undisputedly a strong mark. *See* Pl.'s Am. Compl. at Ex. 1. Plaintiffs have expended substantial time, labor, skill, and expense in developing, advertising, and promoting the Duran Duran Mark. This has resulted in the Duran Duran Mark becoming a strong mark. In addition, the Duran Duran Mark has acquired secondary meaning resulting from Plaintiffs' extensive efforts and expense developing, advertising, and promoting the Duran Duran Mark. (Dkt. 12-1, Laister Decl. ¶ 7). As a result, the Duran Duran Mark enjoys widespread recognition in the minds of consumers. *Id.* ¶ 9.

### (2)    Similarity of the Marks.

Here, the defendants are using marks that are identical or nearly identical to the Duran Duran Mark. Where the marks are so identical that they are counterfeit under 15 U.S.C. § 1127, it would not be error to find this factor alone dispositive. *Paulsson Geophysical Services, Inc. v. Sigmar*, 529 F.3d 303, 311 (5th Cir. 2008) (holding district court did not err in failing to perform

digits of confusion test where defendants used exact marks). This digit, therefore, weighs strongly in favor of Plaintiffs.

### (3)    Similarity of the Goods.

"The greater the similarity between the products and services, the greater the likelihood of confusion." *Dallas Cowboys Football Club, Ltd. v. America's Team Properties, Inc.*, 616 F. Supp. 2d 622, 638 (N.D. Tex. 2009). Defendants are selling the same types of goods that Plaintiffs sell. The defendants are selling the same types of goods that Plaintiffs sell. (Dkt. 12-1, Laister Decl. ¶ 10). Because they bear counterfeits of the Duran Duran Mark, Defendants' Goods appear virtually identical to Plaintiffs' genuine products in the consumer market.

Standing alone, this similarity is sufficient to establish a likelihood of confusion. *See, e.g., Juul Labs, Inc. v. Gladys Smoke Shop, Inc.*, No. 1:20-cv-353, 2021 WL 7184950, at *3 (E.D. Tex. Sept. 7, 2021) (stating "in the case of a counterfeit mark, likelihood of confusion is clear.") (quoting *Microsoft Corp. v. Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1007 n.11 (S.D. Tex. 2000)).

### (4)    Similarity of Sales Methods.

Convergent marketing channels increase the likelihood of confusion. *See Turner Greenberg Assocs. v. C&C Imps.*, 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004). Both Plaintiffs and the defendants sell their products using at least one of the same marketing channels, the Internet, in the same geographical distribution areas within the United States, including the Eastern District of Texas. *See* (Dkt. 12-1, Laister Decl. ¶¶ 6, 13). Thus, the sales channels overlap, and their consumers are the same.

**(5)    Similarity of Advertising Media**

This factor looks to each party's method of advertising. *See Rex Real Estate I, L.P. v. Rex Real Estate Exchange, Inc.*, 80 F.4th 607, 623 (5th Cir. 2023).  "For this factor, we look to the 'similarity between the parties' advertising campaigns. The greater the similarity in the campaigns, the greater the likelihood of confusion.'"  *Id.* (quoting *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 623 (5th Cir. 1998)).  Here both parties advertise online. (Dkt. 12-1, Laister Decl. ¶ 15).

**(6)    Defendants' Intent.**

When an infringer adopts a mark "with the intent of obtaining benefit from the Plaintiffs' business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" *Turner Greenberg Assocs.*, 320 F. Supp. 2d at 1333 (citing *Carnival Corp. v. Seaescape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999)). The defendants engage in clear-cut copying here giving rise to an inference that they intended to benefit from Plaintiffs' reputation to Plaintiffs' detriment. *See Playboy Ent., Inc. v. P.K. Sorren Export Co. Inc. of Florida*, 546 F. Supp. 987, 996 (S.D. Fla. 1982).

**(7)    Evidence of Actual Confusion.**

"Actual confusion need not be proven." *Xtreme Lashes, L.L.C. v. Xtended Beauty, Inc.*, 576 F.3d 221, 229 (5th Cir. 2009). Nevertheless, here a reasonable inference of actual confusion in the marketplace can be found based upon the circumstantial evidence that the defendants are advertising and selling goods identical in every way to Plaintiffs' goods. *See generally* (Dkt. 12-1, Laister Decl. ¶ 13; Schedule E).

The seven factors weigh only in Plaintiffs' favor. Plaintiffs have shown a probability of success on the merits of its trademark counterfeiting and infringement claim.

13

### b)  Likelihood of Success on False Designation of Origin Claim.

Liability for false designation of origin, like trademark infringement, is also established here because the determining factor is whether the public is likely to be deceived or confused by the similarity of the marks at issue. See 15 U.S.C. § 1125(a); *Two Pesos, v. Taco Cabana, Inc*., 505 U.S. 763, 780 (1992). Plaintiffs have established the merits of their trademark counterfeiting and infringement claims; therefore, likelihood of success is also shown for Plaintiffs' claim for false designation of origin.

### c)  Likelihood of Success on Common Law Unfair Competition Claim.

The same test applies to unfair competition as with federal trademark infringement. *See e.g., PetMed Express, Inc. v. MedPets.com, Inc*., 336 F. Supp. 2d 1213, 1217-18 (S.D. Fla. 2004). Plaintiffs have established the merits of its trademark infringement claims; therefore, likelihood of success is also shown for Plaintiffs' unfair competition claim.

### d)  Likelihood of Success on Common Law Trademark Infringement Claim.

The same test applies to common law trademark infringement as to federal trademark infringement.  "The gravamen for any action of trademark infringement or common law unfair competition is whether the challenged mark is likely to cause confusion." *Soc'y of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs*, 41 F.3d 223, 225 (5th Cir. 1995) (quoting *Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 217 (5th Cir. 1985)).  Plaintiffs have satisfied the three elements of their trademark counterfeiting and infringement claims; therefore, their common law trademark infringement is also established.

### e)  Likelihood of Success on Common Law Misappropriation of Image Claim.

For Plaintiffs to state a claim for invasion of privacy by misappropriation under Texas common law, they must satisfy three elements: (i) a defendant appropriated one of the plaintiffs' name or likeness for the value associated with it, and not in an incidental manner or for a

14

newsworthy purpose; (ii) that the applicable plaintiff can be identified from the publication; and (iii) that there was some advantage or benefit to the applicable defendant. *Busch v. Basic Organics, Inc.*, Case No. 3:06-CV-2261, 2007 WL 603385, at *7 (N.D. Tex. Feb. 27, 2007) (citing *Matthews v. Wozencraft,* 15 F.3d 432, 437 (5th Cir. 1994)).   Plaintiffs' evidence clearly establishes the satisfaction of each of the three elements of its Texas common law misappropriation claim. *See generally* (Dkt. 12-1, Lasiter Decl.; Dkt. 12-2, Kula Decl.)

### 2.  Plaintiffs are Suffering Irreparable Injury.

"[A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of … [a] substantial threat of irreparable harm." *Ferrellgas Ptnrs., L.P. v. Barrow*, 143 Fed. Appx. 180, 191 (11th Cir. 2005) (citing *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998)). A finding of irreparable injury following a showing of likelihood of confusion is virtually always made in a case such as this, where a Plaintiff has demonstrated it will lose control of its reputation as a result of a Defendant's activities. *Id*.

A likelihood of confusion exists herein because the defendants have engaged in counterfeiting activities using spurious designations indistinguishable from the Duran Duran Mark.

### 3.  The Balance of Hardship Tips Sharply in Plaintiffs' Favor.

Plaintiffs have expended substantial time, money, and other resources to develop the quality, reputation, and goodwill associated with the Duran Duran Mark and their personal images. (Dkt. 12-1, Laister Decl. ¶ 7.) Defendants should not be permitted to continue their trade in counterfeit or misappropriated goods because Plaintiffs will suffer substantial losses and damage to their images and reputation as a result. *Id.* ¶ 9.

15

Meanwhile, the defendants will suffer no legitimate hardship in the event a preliminary injunciton is issued, because Defendants have no right to engage in their present counterfeiting, infringing, or other unlawful activities.

### 4. The Relief Sought Serves the Public Interest.

The public has an interest in not being misled as to the origin, source, or sponsorship of trademarked or other products. *See, e.g., Nailtiques Cosmetic Corp. v. Salon Sciences, Corp.*, 1997 WL 244746, 5, 41 U.S.P.Q.2d 1995, 1999 (S.D. Fla. 1997) ("The interests of the public in not being victimized and misled are important considerations in determining the propriety of granting injunctive relief.").

Here, the defendants are engaged in illegal activities and are directly defrauding the consuming public by palming off Defendants' Goods as Plaintiffs' genuine goods. The public interest favors the issuance of the requested relief to avoid further harm to the public.

### C. The Equitable Relief Sought is Appropriate.

The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

### 1. Entry of an Order Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiffs' Trademark and Images is Appropriate.

Plaintiffs request an order requiring the defendants to immediately cease all use of the Duran Duran Mark or substantially similar marks, as well as all products bearing Plaintiffs' names or likenesses, including those on or in connection with all e-commerce stores owned and operated, or controlled by them. This relief is necessary to stop the ongoing harm to Plaintiffs' trademark, image, and goodwill and to prevent the defendants from continuing to benefit from the increased

consumer traffic to their illegal operations created by their unlawful use of the Duran Duran Mark and Plaintiffs' images.

Many courts, including this Court, have authorized injunctive relief in similar cases involving the unauthorized use of trademarks or misappropriated images. *See, e.g. Animaccord Ltd. v. Individuals*, No. 4:25-cv-00489, 2025 WL 1678970 (E.D. Tex. June 13, 2025) (Order Granting *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction); *Animaccord Ltd. v. Individuals*, No. 4:25-cv-01061, Dkt. 13, (E.D. Tex. Oct. 3, 2025) (Order Granting *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction).

**2. Entry of an Order Continuing the Prohibited Transfer of the Seller IDs During the Pendency of this Action is Appropriate.**

To preserve the status quo, Plaintiffs seek an order continuing the modification of the control of and continuing to prohibit the defendants from transferring use or control of their Seller IDs being used and controlled by the defendants to other parties during the pendency of this litigation.

Once the temporary restraining order expires on December 30, 2025, and based in part on their current awareness of this litigation against them, the defendants operating online can easily, and often will, change the ownership or modify e-commerce store data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of their Seller IDs, and thereby thwart the Court's ability to grant meaningful relief. (Dkt. 12-2, Kula Decl. ¶ 18).

Here, a preliminary injunction order prohibiting the defendants from transferring their e-commerce stores operating under their Seller IDs poses no burden on them, preserves the status quo, and ensures that this Court, after fully hearing the merits of this action, will be able to afford

Plaintiffs full relief. *See, e.g. Animaccord Ltd. v. Individuals*, No. 4:25-cv-00489, 2025 WL 1678970 (E.D. Tex. June 13, 2025) (Order restraining the transfer of e-commerce stores operating via marketplace platform); *Animaccord Ltd. v. Individuals*, No. 4:25-cv-01061, Dkt. 13, (E.D. Tex. Oct. 3, 2025) (Order restraining the transfer of e- commerce stores operating via marketplace platform)); *see also adidas AG v. Individuals,* Case No. 21-60242 (S.D. Fla. Feb. 5, 2021) (Order restraining the transfer of e- commerce stores operating via marketplace platform).

### 3.  A Preliminary Injunction Restraining Transfer of Assets is Appropriate

In addition to an injunction restraining the defendants' practices, the Court should enter an order continuing to limit the transfer of the defendants' unlawfully gained assets.

Plaintiffs have demonstrated above that they will likely succeed on the merits of their claims. As such, at least under 15 U.S.C. § 1117, Plaintiffs will be entitled to an accounting and payment of the profits earned by the defendants throughout the course of their counterfeiting or other unlawful schemes. 15 U.S.C. § 1117(a) (2018).

The counterfeiting business is inherently deceptive. (Dkt. 12-2, Kula Decl. ¶ 18). In view of the defendants' intentional violations, Plaintiffs respectfully request this Court grant additional relief identifying payment accounts and restraining the transfer of all monies held or received by the financial entities at issue herein for the benefit of any one or more of the defendants. *See International Star Class Yacht Racing Ass'n v. Tommy Hilfiger USA, Inc.*, 80 F.3d 749 (2d Cir. 1996); *SEC v. ETS Payphones*, 408 F.3d 727, 735 (11th Cir. 2005) (finding it proper to restrain all of the defendant's assets, because it was necessary to preserve sufficient funds for the potential disgorgement in the case).

This Court has broad authority to grant such an injunctive order. The Supreme Court has provided that district courts have the power to grant preliminary injunctions to prevent a defendant

from transferring assets in cases where an equitable interest is claimed. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999). Moreover, almost every Circuit has interpreted Rule 65 of the Federal Rules of Civil Procedure to grant authority to courts to restrain assets pendente lite. *See, e.g. Mason Tenders Dist. Council Pension Fund v. Messera*, 1997 WL 223077 (S.D.N.Y. May 7, 1997) (acknowledging that "[a]lmost all the Circuit Courts have held that Rule 65 is available to freeze assets pendente lite under some set of circumstances").

In light of the illicit nature of the counterfeiting business and the ability of counterfeiters to practically eliminate their evidentiary trails by conducting their business entirely over the Internet, courts in various circuits have noted the significance of such asset restraints in cases involving counterfeiting defendants. *See, e.g. Levi Strauss & Co.*, 51 F.3d at 987; *Reebok Int'l Ltd. v. Marnatech Enter.*, 737 F. Supp. 1521 (S.D. Cal. 1989), *aff'd*, 970 F.2d 552 (9th Cir. 1992).

In *Levi Strauss & Co.*, for example, the Eleventh Circuit upheld an order granting an asset restraint against an alleged counterfeiter where the complaint included a request for a permanent injunction and the equitable remedy of disgorgement of the alleged counterfeiter's profits under 15 U.S.C. § 1117. *Levi Strauss & Co.*, 51 F.3d at 987. Distinguishing *Levi Strauss & Co.* from two earlier cases not involving Lanham Act claims, the Court emphasized the necessity of the restraint holding that a "request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Id.* (citing *Federal Trade Commission v. United States Oil and Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984) (district court may exercise its full range of equitable powers, including a preliminary asset restraint, to ensure that permanent equitable relief will be possible)).

It is well established that courts may issue broad asset restraints to preserve the availability of permanent relief, including assets that are not directly traceable to the fraudulent activity that

serves as a basis for the equitable relief requested. *See, e.g., S.E.C. v. Lauer*, 445 F. Supp. 2d 1362, 1370 (S.D. Fla. 2006) (noting that there is no requirement for the restrained assets be traceable to the fraudulent activity underlying a lawsuit); *Levi Strauss & Co*., 51 F.3d at 987-88 (upholding asset restraint, including assets not linked to the profits of the alleged illegal activity, noting the defendants may request the court exempt any particular assets); *Kemp v. Peterson*, 940 F.2d 110, 113-14 (4th Cir. 1991) (district court may restrain assets not specifically traced to illegal activity).

In cases in this district substantially similar to this matter, this Court and others have entered the precise relief sought herein. *See, e.g. Animaccord Ltd. v. Individuals*, No. 4:25-cv-00489, 2025 WL 1678970 (E.D. Tex. June 13, 2025) (Order granting preliminary injunction, requiring financial institutions to identify defendants' payment accounts and to restrain the funds in those accounts to preserve assets to satisfy plaintiffs' requested relief); *Animaccord Ltd. v. Individuals*, No. 4:25-cv-01061, Dkt. 13, (E.D. Tex. Oct. 3, 2025) (Order granting preliminary injunciton, requiring financial institutions to identify defendants' payment accounts and to restrain the funds in those accounts to preserve assets to satisfy plaintiffs' requested relief); *see also Chanel, Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 20-cv-60519-RS (S.D. Fla. April 9, 2020) (same).

Similarly, in *Reebok v. Marnatech*, the District Court granted Reebok a limited restraint of the defendants' assets for the purpose of preserving those assets, thus ensuring the availability of a meaningful accounting after trial. *Reebok Int'l Ltd*., 737 F. Supp. at 1526. In affirming the decision, the Ninth Circuit determined that the plaintiff met its burden of demonstrating: (1) a likelihood of success on the merits; (2) immediate and irreparable harm as a result of defendants' counterfeiting activities; and (3) that defendants might hide their allegedly ill-gotten profits if their assets were not frozen. *Reebok Int'l Ltd*., 970 F.2d at 563. Moreover the Court reasoned: "because

20

the Lanham Act authorizes the District Court to grant Reebok an accounting of [defendant's] profits as a form of final equitable relief, the District Court has the inherent power to freeze [defendant's] assets in order to ensure the availability of that final relief." *Reebok Int'l Ltd.*, 970 F.2d at 559; *see also Republic of Philippines v. Marcos*, 862 F.2d 1355, 1364 (9th Cir. 1988), *cert. denied*, 490 U.S. 1035 (1989) ("[a] court has the power to issue a preliminary injunction in order to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies").

Using the power to issue provisional remedies ancillary to their authority to provide final equitable relief, numerous courts have granted orders restraining defendants from transferring their assets under trademark infringement claims. *See e.g., Levi Strauss & Co.*, 51 F.3d at 987; *Reebok Int'l Ltd.*, 970 F.2d at 559.

In this case, the defendants' blatant violations of federal trademark laws and Texas common law warrant an injunction, restraining the transfer of their ill-gotten assets. Moreover, as the defendants' businesses are conducted anonymously over the Internet, Plaintiffs have additional cause for injunctive relief, as the defendants may easily secret or transfer their assets without the Court's or Plaintiffs' knowledge.

**D.  A Minimal Bond Should Secure the Injunction.**

Because of the strong and unequivocal nature of Plaintiffs' evidence of counterfeiting, infringement, and misappropriation, Plaintiffs respectfully request this Court require it to post a bond of no more than ten thousand dollars ($10,000.00), subject to increase at the Court's discretion should an application be made in the interest of justice. The posting of security upon issuance of a temporary or preliminary injunction is vested in the Court's sound discretion. Fed. R. Civ. P. 65(c).

## IV.    CONCLUSION

In view of the foregoing, Plaintiffs respectfully request this Court grant their motion and enter a preliminary injunction as to the defendants in the form submitted herewith.

Dated:  December 22, 2025            Respectfully submitted,

**BUETHER JOE & COUNSELORS, LLC**

/s/ *Kenneth P. Kula*
Christopher M. Joe
State Bar No. 00787770
Chris.Joe@BJCIPLaw.com
Kenneth P. Kula
State Bar No. 24004749
Ken.Kula@BJCIPLaw.com


1700 Pacific Avenue
Suite 4750
Dallas, Texas 75201
Telephone: (214) 466-1274
Facsimile: (214) 635-2992

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF CONFERENCE

The undersigned certifies that because of the sheer number of defendants—approximately 634—a conference with each, most of which are *pro se* and have not responded to Plaintiffs' counsel after being served or otherwise contacted, individual conferences were not practical. To the extent that Plaintiffs' counsel has communicated with any of the approximately 634 defendants regarding this filing, all indicate that they oppose this motion.

*/s/ Kenneth P. Kula*
Kenneth P. Kula

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on December 22, 2025. As such, this document was served on all counsel who are deemed to have consented to electronic service per Local Rule CV-5(a)(3)(A). In addition, the foregoing document will be served on all defendants or their counsel as authorized and allowed by this Court's pursuant to its order granting alternative methods of service or otherwise.

*/s/ Kenneth P. Kula*
Kenneth P. Kula
